**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CAROL TIMS, individually, and on behalf of all others similarly situated, | **Civil Action No. _____** |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| LGE COMMUNITY CREDIT UNION, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## COMPLAINT

Plaintiff CAROL TIMS ("Plaintiff"), by her attorneys, hereby brings this class and representative action against LGE COMMUNITY CREDIT UNION (referred to herein as "LGECCU" or "Defendant"). All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff, which are based on personal knowledge. Plaintiff's information and belief are based upon, inter alia, Plaintiff's own investigation and the investigation conducted by Plaintiff's attorneys. Each allegation either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.     This is a putative class and representative action brought by Plaintiff to assert claims in her own right, and in her capacity as the class representative of all others persons similarly situated, whose checking accounts were improperly assessed overdraft fees by Defendant.  This class action seeks monetary damages, restitution, and injunctive relief against LGECCU arising from LGECCU's breach of its contracts with its customers in its implementation of an overdraft fee program. Specifically, Plaintiff asserts that LGECCU charged overdraft fees for transactions for which there was money in the checking account to cover said transactions, thereby breaching the express terms of its consumer contracts.  Plaintiff also alleges that because it provided inaccurate and untruthful overdraft information to Plaintiff and the members of the Class regarding the overdraft practice, under Regulation E of the Electronic Fund Transfer Act, 12 C.F.R. § 1005.17, LGECCU was not authorized to assess overdraft fees to consumers for debit card and non-recurring debit card charges.  However, LGECCU did charge its customers, including Plaintiff, overdraft fees for ATM and debit card transactions.

## PARTIES

2.     Plaintiff is a resident of Lake City, Florida, a Florida citizen, and was a member of LGECCU at all times relevant to the class action allegations.

CLASS ACTION COMPLAINT

3.      Based on information and belief, Defendant LGECCU is a state chartered credit union with its headquarters located in Marietta, Georgia.

4.      Plaintiff is unaware of the true names of other potential defendants and the pleadings will be amended as necessary when the true names are ascertained, or as permitted by law or by the Court.

5.      Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendant's ordinary business and affairs.

6.      As to the conduct alleged herein each act was authorized, ratified, or directed by Defendant's officers, directors, or managing agents.

## VENUE AND JURISDICTION

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Jurisdiction is also proper pursuant to the Class Action Fairness Act 28 U.S.C. § 1332(d) because: 1) the claims of the proposed class when aggregated together exceed $5,000,000, and 2) some putative class members are residents of different states than Defendant LGECCU.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)

CLASS ACTION COMPLAINT

because Defendant LGECCU is a resident of and does business in this District and a

substantial part of the events and/or omissions giving rise to the claims asserted

herein occurred in this District.

## FACTUAL ALLEGATIONS

### A.    LGECCU's Unlawful Overdraft Program

9.    LGECCU is a Georgia-based credit union with approximately $1 billion

in assets that provides banking services to approximately 100,000 members through

eight (8) branches in Georgia.   One of the services offered by LGECCU to

consumer banking customers is a checking account.  One of the benefits LGECCU

offers with a checking account is a debit card that can be used for a variety of

transactions including buying goods and services, as well as the ability to write

checks, withdraw from ATM (automated teller machine), schedule ACH

(Automated Clearing House) transactions, such as certain recurring payments, and

other types of transaction items that debit from the checking account.  In connection

with processing debit items (including debit card, ATM, check, ACH, and other

types of transactions), LGECCU assesses overdraft fees to its customers when it

determines that the customer's account is overdrawn.

10.    Credit unions, like banks, have increasingly turned to overdraft fees as a

highly lucrative profit center.  A Federal Deposit and Insurance Corporation (FDIC)

CLASS ACTION COMPLAINT

report estimated that overdraft fees represent 74% of the total service charges that are imposed on deposit accounts in the United States. According to the June 11, 2013, report entitled, "CFPB Study of Overdraft Programs"[1], credit unions generated $7.4 billion in overdraft fees in 2012 (p. 14).

11.     The high cost of an overdraft fee is usually unfairly punitive. In a 2012 study, more than 90% of customers who were assessed overdraft fees overdrew their account by mistake. (May 2012 Pew Charitable Trust report entitled "Overdraft America: Confusion and Concerns about Bank Practices", at p. 4). More than 60% of the transactions that resulted in a large overdraft fee were for less than $50. (June 2014 Pew Charitable Trust report entitled "Overdrawn", at p. 8). More than 50% of those who were assessed overdraft fees do not recall opting into an overdraft program (*id*. at 5), and more than two-thirds of customers would have preferred the financial institution decline their transaction rather than paying the transaction into overdraft and charging a very large fee (*id*. at 10).

12.     Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees. (*Id*. at 1). A 25

---

[1] The Consumer Financial Protection Bureau (CFPB) study may be found at: http://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf

CLASS ACTION COMPLAINT

year-old is 133% more likely to pay an overdraft penalty fee than a 65 year-old.  (*Id*. at 3).  More than 50% of the customers assessed overdraft fees earned under $40,000 per year.  (*Id*. at 4).  Non-whites are 83% more likely to pay an overdraft fee than whites.  (*Id*. at 3).

13.     In reaction to banks and credit unions taking advantage of millions of customers through the unfair practice of charging overdraft fees through methodologies that maximize the possible number of expensive overdraft fees to be charged, a substantial amount of litigation on these issues has occurred over the past few years.  The results of this litigation include a trial verdict in California and nationwide settlements wherein banks and credit unions have been ordered or have agreed to pay unfairly assessed overdraft fees back to their customers in an amount well in excess of a ***billion*** dollars.

14.     The federal government has also stepped in to provide additional protections to customers with respect to abusive overdraft policies.  In 2010, the Federal Reserve Board enacted regulation permitting financial institutions to charge overdraft fees on ATM and one-time debit card charges only if the institution first obtained the affirmative consent of the customer.  12 C.F.R. § 1005.17 (Regulation E's "Opt-In Rule").

CLASS ACTION COMPLAINT

15.     To qualify as affirmative consent, the opt-in notice/agreement must include, but is not limited to the following:

- The customer must be provided the overdraft policy, including the dollar amount of any fees that will be charged for an overdraft;

- The opt-in consent must be obtained separately from other consents and acknowledgements;

- The consent cannot serve any purpose other than opting into the overdraft program;

- The consent cannot be a pre-selected checked box;

- The financial institution may not provide different terms for the account depending on whether the customer opted in to the overdraft program.

If the financial institution does not obtain proper, affirmative consent from the customer that meets all of the requirements of the Opt-In Rule, then it is not allowed to charge overdraft fees on ATM and one-time debit card transactions.

16.     At all relevant times, LGECCU has had an overdraft program (referred to as "Courtesy Pay") in place for assessing overdraft fees on ATM and debit card transactions, which is:  (1) contrary to the express terms of its contracts with

CLASS ACTION COMPLAINT

members; (2) contrary to how LGECCU represents its overdraft program to its members; and (3) contrary to what members expect when assessed overdraft fees.

17.     LGECCU's member contracts advise that LGECCU is entitled to assess an overdraft fee when "an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (NSF)" (*see* "Membership and Account Agreement" ("Account Agreement") at p. 2, attached hereto as Exhibit 1), and further advises "You are not charged for using Courtesy Pay unless you present an item against insufficient funds." (Account Agreement at p. 10).   In another member contract, LGECCU defines an overdraft as when there is not enough money in the account to cover a transaction, but LGECCU pays it anyway.  (*See* Exhibit 2, "What You Need to Know About Overdrafts and Overdraft Fees" ("Opt-In Agreement") attached hereto.)  (LGECCU's Account Agreement and Opt-In Agreement are hereinafter collectively referred to as "Customer Agreements").

18.     LGECCU's contractual promises in its Customer Agreements to only assess overdraft fees when there is not enough money in the account to cover the item was also provided to customers in other disclosures and marketing materials it provided to customers.

CLASS ACTION COMPLAINT

19.     However, contrary to its Customer Agreements, and other marketing materials indicating that LGECCU will only charge overdraft fees when there is not enough money in the checking account to cover the transaction, LGECCU's practice when assessing an overdraft fee on a transaction is to ignore whether there is money in the account, and instead make the automated decision on assessing overdraft fees based on an artificial internal calculation (sometimes known as the "available balance") rather than the actual balance.

20.     The available balance is the actual balance minus anticipated debits in the future (that may or may not occur) and deposits that have not yet cleared pursuant to its funds availability policy.  The use of an internal available balance rather than the money in the account to determine whether a transaction results in an overdraft and is subject to an overdraft fee is directly contrary to LGECCU's Customer Agreements.  The result is that LGECCU improperly charges members overdraft fees in situations when there is money in the account to cover the transaction.

21.     This practice is in breach of LGECCU's Customer Agreements. Additionally, the practice of charging overdraft fees even when there is sufficient money in the account to cover the transaction is inconsistent with how LGECCU describes the circumstances of when it assesses overdraft fees in other customer

CLASS ACTION COMPLAINT

materials.  Further, LGECCU has failed to inform customers of the conditions under which overdraft fees will be assessed in both its Customer Agreements and other marketing materials.

22.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them in accordance with the terms and conditions of the contracts.

23.     Therefore, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as set forth below.

**B.     Unlawful Overdraft Fees Assessed to Plaintiff Carol Tims**

24.     Plaintiff was harmed by Defendant's practice of charging overdraft fees when there was money in the account to cover the transaction.  Plaintiff entered into an agreement, and opted-in the overdraft program with LGECCU, wherein LGECCU contracted to charge overdraft fees only if there was not money to cover the transaction.  LGECCU breached its Customer Agreements with Plaintiff, and in breaching the Opt-In Agreement, violated Regulation E.  It will be necessary to obtain Defendant LGECCU's records to determine each occasion when LGECCU engaged in this practice and the damage to Plaintiff as a result.  However, to give two (2) separate examples:  (1) on June 29, 2013, Plaintiff was charged an overdraft fee of $30.00 on a debit card transaction despite having money in her account to

CLASS ACTION COMPLAINT

cover the transaction; and on September 17, 2013, Plaintiff was again charged an overdraft fee of $30.00 despite having money in her account to cover the transaction. Accordingly, it is with reasonable belief that a complete review of Plaintiff's and LGECCU's records will show multiple instances LGECCU improperly charged Plaintiff overdraft fees for transactions despite Plaintiff having money in her account to cover the transactions.

25.     Moreover, the assessment and unilateral taking of improper overdraft fees further reduces the balance and amount of funds in the account, resulting in, and aggressively causing subsequent, otherwise non-overdrafting transactions to be improperly treated as transactions for which LGECCU assesses further overdraft fees.  As such, a complete evaluation of LGECCU's records is necessary to determine the full extent of Plaintiff's harm from this practice.

## CLASS ACTION ALLEGATIONS

26.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

27.     Plaintiff brings this case, and each of her respective causes of action, as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of the following classes.

CLASS ACTION COMPLAINT

28.     The "Class" is composed of two potential classes:

**The Positive Balance Class:**

> **All US residents who have or have had accounts with LGECCU who incurred overdraft fees for ATM and non-recurring debit card transactions when there was money in the checking account to cover the transactions in the six (6) years preceding the filing of this Complaint.**

**The Regulation E Class:**

> **All US residents who have or have had accounts with LGECCU who were opted into the overdraft program for ATM and non-recurring debit card transactions through the use of the Opt-In Agreement which provided inaccurate or misleading information on LGECCU's overdraft program in violation of Regulation E, and were assessed overdraft charges resulting from ATM and/or non-recurring debit card transactions since August 15, 2010.**

29.     Excluded from the above Classes (the two proposed Classes will collectively hereinafter be referred to as the "Class") are: (1) any entity in which Defendant LGECCU has a controlling interest; (2) officers or directors of LGECCU; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class.

30.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using

CLASS ACTION COMPLAINT

the same evidence as would be used to prove those elements in individual actions alleging the same claim.

31.     This action has been brought and may be properly maintained on behalf of each member of the Class proposed herein under Federal Rule of Civil Procedure 23.

32.     **Numerosity of the Class (Federal Rule of Civil Procedure 23(a)(1))** – The members of the Class are so numerous that a joinder of all members would be impracticable.  While the exact number of the members of the Class is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes that the Class is likely to include thousands of members.

33.     Upon information and belief, Defendant has databases, and/or other documentation, of its customers' transactions and account enrollment.  These databases and/or documents can be analyzed by an expert to ascertain which of LGECCU's customers have been harmed by its practices and thus, which customers qualify as Class members.  Further, the Class definitions identify groups of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify him or herself as having a right to recover.  Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action

CLASS ACTION COMPLAINT

may be provided to the Class members through notice published in newspapers or other publications.

34.   **Commonality (Federal Rule of Civil Procedure 23(a)(2)** – This action involves common questions of law and fact.  These common questions of law and fact take precedence over those questions that may only affect individual Class members.  The questions of law and fact common to both Plaintiff and the Class members include, but are not limited to, the following:

a.    Whether Defendant LGECCU had standardized Account Agreements during the Class period that were provided to its customers;

b.    Whether Defendant LGECCU had standardized Opt-In Agreements during the Class period that was provided to its customers;

c.    Whether Defendant LGECCU's conduct breached the Opt-In Agreement by use of an automated system of assessing overdraft fees for transactions when customers' checking accounts had money to cover the transactions;

d.    Whether Defendant LGECCU's conduct violated 12 C.F.R. § 1005.17.

CLASS ACTION COMPLAINT

35.     **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – Plaintiff's claims are typical of all of the members of the Class.  The evidence and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiff and all of the Class members, as the relevant agreements and the challenged overdraft fee practice that was applied to Defendant's customers' accounts are uniform for Plaintiff and all Class members.

36.     **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – Plaintiff will fairly and adequately protect the interests of the Class members.  Plaintiff has retained competent counsel experienced in class action litigation to ensure such protection.  There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate.  Plaintiff and her counsel intend to prosecute this action vigorously.

37.     **Predominance and Superiority (Federal Rule of Civil Procedure 23(b)(3))** – The common questions of law or fact identified herein and to be identified through discovery take precedence over questions that may affect only individual Class members.  Further, the class action is superior to all other available methods for the fair and efficient adjudication of matter.  Because the injuries suffered by the individual Class members may be relatively small, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and

CLASS ACTION COMPLAINT

Class members to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiff and the Class members will continue to suffer losses, thereby allowing these violations of law to proceed without remedy and allowing Defendant LGECCU to retain the proceeds of its ill-gotten gains.

38.    Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon

CLASS ACTION COMPLAINT

information and belief, Defendant LGECCU's own business records and electronic

media can be utilized for the contemplated notices.  To the extent that any further

notices may be required, Plaintiff would contemplate the use of additional media

and/or mailings.

39.     The matter is properly maintained as a class action pursuant to Rule

23(b) of the Federal Rules of Civil Procedure, in that:

a.     Without class certification and determination of declaratory,

injunctive, statutory, and other legal questions within the class format,

prosecution of separate actions by individual members of the Class will create

the risk of:

1.     Inconsistent or varying adjudications with respect to

individual members of the Class which would establish incompatible

standards of conduct for the parties opposing the Class; or

2.     Adjudication with respect to individual members of the

Class which would as a practical matter be dispositive of the interests of

the other members not parties to the adjudication or substantially impair

or impede their ability to protect their interests;

b.     The parties opposing the Class have acted or refused to act on

grounds generally applicable to each member of the Class, thereby making

CLASS ACTION COMPLAINT

appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

      c.    Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

      1.    The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

      2.    The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

      3.    The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

      4.    The difficulties likely to be encountered in the management of a class action.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

40.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.  This cause of action relates to the Positive Balance Class only.

CLASS ACTION COMPLAINT

41.     Plaintiff and each of the Class members entered into contracts with Defendant covering the subject of overdraft transactions.  These contracts were drafted by and are binding on Defendant LGECCU.

42.     The contracts authorized Defendant LGECCU to assess overdraft fees only for ATM and non-recurring debit card transactions for which there was not money in the account to cover the transaction.  LGECCU has breached these contracts.

43.     Further, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

44.     The material terms of the contracts also included the implied covenant of good faith and fair dealing, whereby Defendant LGECCU covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each

CLASS ACTION COMPLAINT

Class member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class members' rights and benefits under the contract.

45.     Plaintiff and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

46.     Defendant breached the expressed terms of the contracts by, inter alia, assessing overdraft fees when there was money in the account to cover the transaction(s).

47.     Alternatively, Defendant breached the implied covenant of good faith and fair dealing based on this practice.

48.     As a proximate result of Defendant's breach of the contracts, Plaintiff and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION
### (Unjust Enrichment/Restitution)

49.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

50.     As a result of the wrongful misconduct alleged above, Defendant LGECCU unjustly received millions of dollars in overdraft fees.

51.     Because Plaintiff and the Class members paid the erroneous overdraft fees assessed by Defendant LGECCU, Plaintiff and the Class members have conferred a benefit on Defendant.  Defendant has knowledge of this benefit, as well as the wrongful circumstances under which it was conveyed, and yet have voluntarily accepted and retained the benefit conferred.  Should it be allowed to retain such funds, Defendant will be unjustly enriched.  Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

## THIRD CAUSE OF ACTION
### (Money Had and Received)

52.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

53.     Defendant LGECCU has obtained money from Plaintiff and the Class members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

CLASS ACTION COMPLAINT

54.     As a result, Defendant LGECCU has in its possession money which in equity belongs to Plaintiff and the Class members, and thus, this money should be refunded to Plaintiff and the Class members.  Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

## FOURTH CAUSE OF ACTION
### (Negligence)

55.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

56.     In general, people have a duty to use due care to avoid injury to others, and may be held liable if their careless conduct injures another person.  Defendant LGECCU had and continues to have a duty to maintain and preserve its customers' accounts and to prevent diminishment of those accounts though its own wrongful acts.  Specifically, Defendant LGECCU owed a duty of care to Plaintiff and the Class members to not charge overdraft fees for transactions for which there was money in the account.

57.     Defendant LGECCU breached this duty by unreasonably mishandling the accounts of its customers, including Plaintiff and the Class members, by taking funds its customers' accounts by way of overdraft fees for transactions under circumstances in which those overdraft fees should not have been assessed.

CLASS ACTION COMPLAINT

58.     As a proximate result of Defendant LGECCU's negligence, Plaintiff and each Class member has been damaged in an amount to be proven at trial. Therefore, Plaintiff and the Class members seek relief as set forth in the Prayer below.

## FIFTH CAUSE OF ACTION
### (Violation of Electronic Fund Transfer Act)

59.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.  This cause of action relates to the Regulation E Class only.

60.     Because of its failure to truthfully and accurately provide the conditions under which an overdraft fee will be assessed, Defendant LGECCU failed to comply with Regulation E, 12 C.F.R. § 1005.17, which requires affirmative consent before a financial institution is permitted to assess overdraft fees on customers' accounts through an overdraft program for ATM and non-recurring debit card transactions.

61.     As a result of assessing overdraft fees in circumstances for which it did not garner the consent necessary to do so pursuant to Regulation E, Defendant LGECCU has harmed Plaintiff and the Class.

62.     Due to Defendant LGECCU's failure to comply with Regulation E, 12 C.F.R. § 1005.17, Plaintiff and members of the Class are entitled to actual and

CLASS ACTION COMPLAINT

statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1693m.

## PRAYER

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1. For an order certifying this action as a class action;

2. For compensatory damages on all applicable claims and in an amount to be proven at trial;

3. For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

4. For an order enjoining the wrongful conduct alleged herein, including ceasing to charge overdraft fees for transactions for which there was money in the account to cover the transaction, and providing accurate and reliable information regarding the overdraft practice;

5. For costs;

6. For pre-judgment and post-judgment interest as provided by law;

7. For attorneys' fees under the Electronic Fund Transfer Act, the common fund doctrine, or other applicable laws or contracts; and

8. For such other relief as the Court deems just and proper.

CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff and the Class members demand a trial by jury on all issues so triable.

DATED this 9th day of December, 2015.

By:  */s/ E. Adam Webb*

E. Adam Webb
  Ga. Bar No. 743910
G. Franklin Lemond, Jr.
  Ga. Bar No. 141315
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, S.E., Suite 480
Atlanta, Georgia  30339
Telephone:  (770) 444-9325
Facsimile:  (770) 444-0271
Adam@WebbLLC.com
Franklin@WebbLLC.com

Richard D. McCune
  Cal. Bar No. 132124*
**MCCUNEWRIGHT LLP**
2068 Orange Tree Lane, Suite 216
Redlands, California  92374
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275
rdm@mccunewright.com

Taras Kick
  Cal. Bar No. 143379*
**THE KICK LAW FIRM, APC**
201 Wilshire Boulevard, Suite 350
Santa Monica, California 90401
Telephone:  (310) 395-2988
Facsimile:  (310) 395-2088
taras@kicklawfirm.com

**Pro Hac Vice* applications to be
submitted

*Attorneys for Plaintiff Carol Tims and the
Putative Class*

CLASS ACTION COMPLAINT