IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CAROL TIMS, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LGE COMMUNITY CREDIT UNION,<br><br>Defendant. | CIVIL ACTION FILE<br>NO. 1:15-CV-4279-TWT |

**OPINION AND ORDER**

This is a breach of contract class action. It is before the Court on the Defendant's Motion to Enforce Judgment [Doc. 190]. For the reasons set forth below, the Defendant's Motion to Enforce Judgment [Doc. 190] is DENIED.

### I.   Background

In 2015, the Plaintiff initiated this action alleging that the Defendant was improperly assessing overdraft fees on its customer accounts for transactions where the customer maintained a sufficient account balance to cover the transaction. (*See, e.g.*, First Am. Compl. ¶ 1). The Plaintiff alleged that these overdraft fees constituted a breach of the Defendant's consumer contracts with its customers. (*Id.*). In her First Amended Complaint, the Plaintiff asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, money had and received, and violation of the Electronic Fund Transfer Act. (*Id.* ¶¶ 43-69). After years of litigation, the parties reached a binding settlement, and on February 12, 2022,

the Court entered an order granting final approval to the parties' Settlement Agreement. [Doc. 187 (Final Approval Order); Doc. 144-1 (Settlement Agreement)]. Under the terms of the Settlement Agreement, the "Settlement Class" was divided into two sub-classes known as the "Regulation E Class" and the "Sufficient Funds Class." (Settlement Agreement ¶ 1(cc),(dd), (gg)). The Regulation E Class includes "members of Defendant who opted in to the overdraft program, and who were charged an overdraft fee on an ATM or debit card transaction on a non-business account between August 15, 2010 and September 18, 2015." (*Id.* ¶ 1(cc)). The Sufficient Funds Class includes "members of Defendant who received an overdraft fee on a non-business account when, at the time the transaction posted to the member's account, the ledger balance was equal to or greater than the transaction causing the overdraft between December 9, 2009 and September 18, 2015." (*Id.* ¶ 1(gg)). The Settlement Agreement also contained a release provision, which provided that:

> [e]xcept as to the rights and obligations provided for under the terms of this [Settlement] Agreement, Named Plaintiff, . . . and each of the Class Members . . . hereby release and forever discharge Defendant . . . from any and all charges, complaints, claims, debts, liabilities, demands, obligations, costs, expenses, actions, and causes of action of every nature, character, and description, whether known or unknown, asserted or unasserted, suspected or unsuspected, fixed or contingent, which Named Plaintiff and Class Members who do not opt out now have, own, or hold against any of the Defendant Releasees that arise out of and/or relate to the facts and claims alleged by Named Plaintiff in this case.

(*Id.* ¶ 16).

On January 18, 2023, Class Member Ryan Pincott filed a class action complaint in Cobb County Superior Court against the Defendant alleging that he and others were improperly assessed overdraft fees authorized on accounts with sufficient funds. (Mot. to Enforce Judgment, Doc. 190, Ex. 4 ¶¶ 1, 17-20). Pincott further alleged that the Defendant's practice of collecting overdraft fees violated its standard customer agreement. (*Id.* ¶¶ 2, 19, 36). In particular, Pincott alleged that "[i]n December 2018, [he] was assessed $30.00 [overdraft] Fees on debit card transactions that settled that day, even though the transactions had been previously authorized on a sufficient available balance." (*Id.* ¶ 74). Pincott asserted claims for breach of contract and unjust enrichment. (*Id.* at 19-21). Pincott never opted out of the settlement in this action. (*See* Final Approval Order at 2).

On March 1, 2023, the Defendant filed the Motion to Enforce Judgment [Doc. 190] that is presently before the Court, seeking to enforce the Settlement Agreement against Pincott by asking this Court to enjoin him from prosecuting his state court action. (Br. in Supp. of Mot. to Enforce Judgment, at 1). The Defendant relies on injunctive language in the Court's Final Judgment, which stated:

> All Class Members are bound by the Settlement, the release contained therein, and this Final Judgment. . . . The Defendant Releasees are forever discharged and released from all released

3

> claims. . . . Class Members are permanently barred and enjoined from instituting or continuing the prosecution of any action asserting released claims against Defendant Releasees.

(Final Judgment, Doc. 188, ¶¶ 3-4, 8). With regard to separate suits, the Final Judgment provided that:

> In the event that the provisions of the Settlement, the Order Granting Final Approval of Class Settlement, or this Judgment are asserted by Defendant or other Defendant Releasees as a ground for a defense, in whole or in part, to any claim or cause of action, or are otherwise raised as an objection in any other suit, action, or proceeding by a Class Member or Defendant Releasees, the Defendant Releasees shall be entitled to an immediate stay of that suit, action, or proceeding until after this Court has entered an order or judgment determining any issues relating to the defense or objections based on such provisions, and no further judicial review of such order or judgment is possible.

(*Id.* ¶ 9). Thus, in the Court's view, the first issue to be decided is whether the claims asserted by Pincott in the state court action were released in the Settlement Agreement. Second, the Court will consider whether the claims Pincott brought in his state court action are barred by res judicata.

## II. Legal Standards

The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Through the All Writs Act, Congress codified "the long recognized power of courts of equity to effectuate their decrees by injunctions or writs of assistance and thereby avoid relitigation of questions once settled between the same parties." *Wesch v.*

4

*Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993). The Anti-Injunction Act, by contrast, acts as a restraint on the broad powers granted to federal courts by the All Writs Act. *See id.* Under the Anti-Injunction Act, a federal court may not enjoin state court proceedings *except* "[1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283. Only the second and third exceptions are relevant to this case.

Under Georgia law, a "settlement agreement is a contract subject to construction by the court." *Bulford v. Verizon Bus. Network Servs., Inc.*, 564 F. App'x 449, 451-52 (11th Cir. 2014) (citing *Darby v. Mathis*, 212 Ga. App. 444, 444-45 (1994)). However, "no construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." *Id.* at 452.

"Res judicata, or claim preclusion, will prohibit a party from re-litigating a claim where a judgment on the merits (involving the same claim and the same parties) exists from a prior action. The principles of claim preclusion apply to judgments in class actions as in other cases." *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007) (quotation marks and citation omitted). The four elements of claim preclusion are: "(1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) identity of the parties; (4) identity of the causes of action." *Id.* Claim

5

preclusion further applies to "all legal theories and claims arising out of the same operative nucleus of fact." *Id.*

## III. Discussion

In its brief, the Defendant argues that the present case was still pending at the time that Pincott alleges the Defendant improperly assessed overdraft fees in December 2018. (Br. in Supp. of Mot. to Enforce Judgment, at 10). The Defendant contends that the All Writs Act gives this Court the authority to enjoin the state court action in order to effectuate the Final Judgment in this case. (*Id.* at 11-12). In particular, the Defendant argues that because res judicata precludes the claims Pincott seeks to litigate in the state court action, an injunction under the All Writs Act is appropriate. (*Id.* at 12-15). The Defendant further asserts that an injunction is appropriate because Pincott's claims were released in the Settlement Agreement. (*Id.* at 13-16).

Pincott responds that the Settlement Agreement's plain terms do not extend to his claims, which arose after the end date of the claim release period. (Pincott's Resp. in Opp. to Mot. to Enforce Judgment, at 2, 6-10). Pincott also argues that his claims concern a distinct theory of liability and rely on different portions of the Defendant's customer agreement than did the claims at issue in the present case, and that the two sets of claims do not share the identical factual predicate necessary to invoke res judicata. (*Id.* at 10-27).

## A. Release of Claims in the Settlement Agreement

The Court begins its analysis with the release provisions of the Settlement Agreement. That analysis begins and ends with the definitions of the two class member groups—the very same definitions which brought Pincott into the purview of this action in the first place. The definitions placed an upper time-limit on class membership to customers of the Defendant who had incurred overdraft fees by September 18, 2015. (Settlement Agreement ¶ 1(cc),(dd), (gg)). The Settlement Agreement also confirms that these class members were members of the "Settlement Class" bound by the release provisions. (*Id.* ¶ 1(dd)). Importantly, the release provision has a qualifier that in order for a claim against the Defendant to be released, it had to "arise out of and/or relate to the facts and claims alleged by Named Plaintiff" in this action. (*Id.* ¶ 16). The Court finds that Pincott's claim could not have arisen out of or sufficiently related to the facts in this case for two reasons.

First and foremost, Pincott alleges in his state court complaint that his claim accrued over three years after the latest possible claim accrual date plainly stated in the Settlement Agreement, which was September 18, 2015. *See Bulford*, 564 F. App'x at 451-52 (noting that a contract cannot be construed by the Court when the language is "plain, unambiguous, and capable of only one reasonable interpretation."). Plainly, the Defendant's attempts to read the Settlement Agreement to broadly encompass any claim that a class member

7

had against the Defendant at the time the Settlement Agreement was executed clearly belie the parties' intentions in settling this matter, as evidenced by the terms of the Settlement Agreement. If the parties truly intended to release claims pending up until the date that the Settlement Agreement was executed, nearly seven years after the latest possible claim accrual date specified in the Class Member definitions, they could have written that into the release provision.

Second, the mechanism by which Pincott alleges the Defendant improperly overdrafted his account in December 2018 also differs from what the Plaintiff alleged in the present case. The Plaintiff here alleged that the Defendant improperly relied on its customers' available balances to determine whether an overdraft fee should be assessed on a transaction, rather than the ledger balance as promised in its customer agreement. (*See* First. Am. Compl. ¶¶ 17-20). In contrast, in his state court complaint, Pincott alleges that the Defendant improperly assessed overdraft fees on transactions known as "authorize positive, settle negative" or APSN transactions. (Mot. to Enforce Judgment, Ex. 4 ¶¶ 17-18). Among the differences between these two methods is that in the Plaintiff's case, she alleged that an overdraft fee was charged when her available balance was less than needed to cover the transaction presented at the time of authorization, but her ledger balance would not have resulted in an overdraft on the account for the same transaction. (*See* First.

Am. Compl. ¶ 26). But Pincott alleges almost the opposite; he asserts that the Defendant charged him an overdraft fee when his actual balance was positive at the time the transaction was authorized and the funds were held from his available balance, but later when the same transaction was settled, the account balance was negative. (Mot. to Enforce Judgment, Ex. 4 ¶¶ 17-24). Suffice it to say that Pincott's state court complaint asserts that the Defendant breached the customer agreement in a different manner than the Plaintiff alleged in the present matter and that the Defendant was unjustly enriched as a result. For these reasons, the Court finds that Pincott's claims in the state court complaint do not "arise out of and/or relate to the facts and claims alleged" by the Plaintiff in this case and were therefore not released by Pincott as part of the Settlement Agreement.

### B. Res Judicata

The Defendant's second argument—that Pincott could have asserted his claim in the present action—presents a tougher question. The first three elements of res judicata are not disputed by the parties and the Court will therefore only address the fourth—whether the present action and the one Pincott brought in state court share the same operative nucleus of fact. *See Adams*, 493 F.3d at 1289. More recently, the Eleventh Circuit has rephrased the shared nucleus of fact requirement as requiring "the same factual predicate." *TVPX ARS, Inc. v. Genworth Life and Annuity Ins. Co.*, 959 F.3d

1318, 1325 (11th Cir. 2020). That analysis leads the Court to the same conclusion it came to on the settlement release question: Pincott's claims do not share the same factual predicate as the Plaintiff's claims in the present action. *See id.* at 1326 (noting that in assessing the res judicata effect of a prior action, the Court can "consider the parties' settlement documents to determine the claims at issue in a prior action."). The Court's comparison of the two complaints at issue, which revealed the time discrepancies and the differing overdraft determination methods, provides substantial support for the determination that the two suits do not arise from the same factual predicate. But a review of the class notice submitted to class members in the present action seals the Defendant's fate. The top, bolded heading of the notice reads as follows:

> If you had a checking account with LGE Community Credit Union ("LGE") and you were charged an overdraft fee between December 9, 2009 and September 18, 2015, then you may be entitled to a payment from a class action settlement[.]

(Settlement Agreement at 19). The time-limiting language of this notice sent to class members, including Pincott, further emphasizes the parties' intent to limit the claims at issue (and settled) in the present action to those incurred before September 18, 2015. Therefore, because Pincott's state court claims were incurred in December 2018 and involved a different method of overdraft determination, his state court action does not share the same factual predicate as the present action, and res judicata does not apply.

Finally, although the Defendant argues that Pincott could have raised his claim in the present action, the Defendant fails entirely to address the procedural vehicle by which Pincott, a class member, could have asserted his own claim in this class action. But even assuming in the Defendant's favor that Pincott could have permissively intervened in this action to assert his own claims, res judicata still would not bar Pincott's state court action. Whether or not the claim could have been brought previously would be an appropriate consideration if all four res judicata factors were met in the first place; here, for the reasons explained above, they were not. See *TVPX ARS, Inc.*, 959 F.3d at 1326. ("[I]t is not enough that the prior action encompassed the same primary rights and duties as the subsequent complaint. The plaintiff must have also been capable of bringing the same claims in the first action.").

## IV.   Conclusion

For the reasons set forth above, the Defendant's Motion to Enforce Judgment [Doc. 190] is DENIED.

SO ORDERED, this     15th     day of June, 2023.

THOMAS W. THRASH, JR.
United States District Judge